IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DERRICK L. CARROLL | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. PX 20-2110 |
| WARDEN FRIDAY, *et. al* | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT**

Defendants Bryan Hoffman, Jeffrey Nines, Vaughn Whiteman, Bettie Harris, Rachmiel Tobesman[1], Acting Warden Orlando Johnson, and Assistant Warden Briscoe, by and through their attorneys Brian E. Frosh, Attorney General, and Sharon E. Conners, Assistant Attorney General, pursuant to Fed.R.Civ.P. 12(b)(6) and 56 hereby file this Motion to Dismiss or in the Alternative, for Summary Judgment. In support thereof, Defendants state the following:

I. **INTRODUCTION**

Plaintiff, a maximum security inmate incarcerated with the Department of Public Safety and Correctional Services, filed an Amended Complaint against Defendants alleging, among other things, that he was unconstitutionally denied kosher meals, and that he was transferred to NBCI and denied requested shoes in retaliation for filing Requests for Administrative Remedy. ECF 10.

However, Plaintiff was denied a kosher meal after Chaplain Tobesman determined that

---

[1] Rabbi Rachmiel Tobesman was identified as a defendant in Plaintiff's Initial Complaint but not in the subsequently filed Amended Complaint. Defendants take the position that the Amended Complaint supersedes the Initial Complaint. However, to the extent the Court interprets Plaintiff's Amended Complaint as a Supplement to the previous filing, this Motion is also made on behalf of Chaplain Tobesman.

1

Plaintiff did not demonstrate sufficient understanding of kosher meals, and could not provide support for his assertion that kosher meals were necessary to practice his religion. Exhibit 3.

Further, Plaintiff was not transferred to North Branch Correctional Institution out of retaliation, but instead as a matter of course following his intake and initial security classification at the Maryland Reception, Diagnostic and Classification Center ("MRDCC"). Exhibit 1. Plaintiff was classified as a maximum security inmate due to the violent nature of his crimes, the length remaining on his sentence, previous incarceration history, and completion of the initial security classification instrument. Exhibit 1. The facts clearly demonstrate that Plaintiff was not discriminated against, was not unconstitutionally denied a kosher meal, and was not subject to retaliation due to filing Requests for Administrative Remedy. Accordingly, Plaintiff's Complaint against Defendant must be dismissed. In the alternative, Defendants are entitled to judgment as a matter of law.

## II. **STATEMENT OF FACTS**

### a. Transfer to MRDCC and Initial Security Classification Review

Following the completion of a prison sentence in Delaware, Plaintiff was transferred to the Maryland Reception, Diagnostic and Classification Center ("MRDCC"). Exhibit 1: Declaration of Bettie Harris. MRDCC is a diagnostic and classification center. Id. Inmates come to this facility for intake, security classification, and transfer to an appropriate facility. When an inmate is transferred from another state upon completion of a sentence in that state, the inmate's base file is not transferred with the inmate. Id.. Instead, a new base file is created for the Maryland sentence. Id.

On June 5, 2020, a Case Management Specialist performed Plaintiff's initial security classification review. Id. When developing an inmate's initial security classification, the assigned

Case Manager considers many different factors. Id.. Some of those factors include previous violent crimes, the length of the inmate's sentence, and incarceration history. Exhibit 1. Declaration of Bettie Harris. In addition, an Initial Security Classification Instrument is completed, and a score is generated. Id.

The Case Manager then takes all of these factors together to determine the inmate's initial security classification. At the time of his review, Plaintiff had more than 200 years remaining on his sentence. Exhibit 2: Declaration of Bryan Hoffman. The Case Manager determined that Plaintiff should be classified as a maximum security inmate. Exhibit 1. This recommendation then went to the Case Manger's supervisor who approved the classification, and finally to Bettie Harris, the Correctional Case Management Manager at MRDCC. Id. Prior to the COVID-19 pandemic inmates were permitted to attend the initial security classification review – however now with the COVID-19 protocols, such reviews are now held in absentia. Id. As a result of the security classification, Plaintiff was transferred to NBCI.

      b.  Plaintiff's Religious Beliefs and Denial of Kosher Diet

Plaintiff states that he observes the Jewish faith, and that as a result, he must eat kosher meals. ECF 1, ECF 10, ECF 10. He further claims that upon transfer to Maryland Reception, Diagnostic, and Classification Center ("MRDCC"), Plaintiff informed the intake officer that he required a Kosher diet for religious reasons, and that he completed multiple forms regarding his religious adherence. ECF 10. Plaintiff further claims that he wrote to the Food Service Department, filed Requests for Administrative Remedy, authored letters to the Warden and Assistant Warden, and drafted letters to the mental health professional counselors, and generalized grievances. ECF 10, P. 8.

Chaplain Rachmiel Tobesman is the Administrative Chaplain at Central Maryland Correctional Facility ("CMCF"), and the Rabbinic Advisor to the Department of Public Safety and Correctional Services ("DPSCS"). Exhibit 3: Declaration of Chaplain Tobesman. In that positon, he oversees all Religious Diet Program (RDP) state-wide. He is also a Rabbi. Id.

When an inmate enters the Division of Correction, he is asked to complete religious affiliation paperwork. Id. Before an inmate may receive a Kosher diet, the inmate first completes the Religious Diet Application Form. Id. Chaplain Tobesman then review the application form, and interviews the inmate regarding his understanding of the Kosher diet to confirm the inmate is in fact entitled to receive the Kosher diet. Id. The inmate need not provide elaborate detail regarding the Kosher diet, but must express a rudimentary level of understanding to be entitled to receive such a meal. Id.

In Plaintiff's Religious Diet Application Form, the information he provided demonstrated that he was not eligible to receive a Kosher diet. Exhibit 3. Specifically, he did not express a sufficient understanding of the kosher diet, and the information provided was confusing, unverifiable, and not within the beliefs of the faith groups that are eligible to receive a kosher diet. Id. In fact, Plaintiff claimed to be a "Benammi Jew from the lost tribe of Judah." This is not part of Jewish belief. Id.

In further attempt to verify Plaintiff's claimed religious affiliation, the Urantia Foundation was listed on the Religious Diet Application as a supporting contact. Id. The basis of the Urantia belief system is The Urantia Book. More than one-third of this book is devoted to the narrative of the life and teachings of Jesus, and the Judeo-Christian tradition is given an importance exceeding any other. Id. This is not a Jewish belief. Id. Plaintiff further claimed to be Jewish by birth, which could not be verified. Exhibit 3.

Overall, Plaintiff's Religious Diet Application reflected that Plaintiff's beliefs are similar to Christianity, and has no requirement to keep a kosher diet. Id. Accordingly, on June 10, 2020 Plaintiff's Religious Diet Application was denied per COMAR 12.03.02.04C(4): Plaintiff falsified information, and COMAR 12.03.02.04C(6) and (7): shall decide based on all information available and considered to approve or deny the inmate's application; and shall document the decision to approve or deny the inmate's request to participate on the Religious Diet Plan. Id.

Plaintiff's RDP Application was again rejected on December 8, 2020 after Plaintiff was again unable to demonstrate a sufficient understanding of kosher, and provided only confusing and unverifiable information in his RDP Application. Id.

Though Plaintiff did not identify on his Religious Diet Application that he was a previous participant in the Department of Public Safety and Correctional Services ("DPSCS") kosher program, records are reviewed as a matter of procedure. Id. Upon review of such records, it was confirmed that there is no record of Plaintiff ever having participated in the DPSCS Religious Diet Program at any facility in DPSCS. Id.

  c. Security Denial of Request for Shoes

Plaintiff claims that the shoes he was provided at MRDCC were unsatisfactory, caused his feet to sweat, and resulted in a foul odor and pain. ECF 10. Plaintiff further alleges that he was seen by a physician at the institution who authored a medical note to allow Plaintiff to receive shoes from a family member. ECF 10. Plaintiff alleges, however, that the shoes were not provided to him because the shoes sent to the facility were not approved by the security staff. ECF 10. No member of the security staff is named as a defendant in this litigation.

In fact, in Exhibit D to his Amended Complaint, on July 21, 2020 Plaintiff wrote to Assistant Warden Briscoe regarding his request for shoes. ECF 10-2. In response, on July 28, 2020

– two days before his transfer to NBCI – Defendant Briscoe advises Plaintiff that he can order shoes once he is transferred to the new facility. ECF 10-2.

Plaintiff makes no reference of a continued issue involving footwear subsequent to his transfer to NBCI.

      d.   Requests for Administrative Remedy and Appeals

Plaintiff claims that he filed Requests for Administrative Remedy regarding the denial of his request for a kosher diet, as well as the security officer's alleged refusal to allow Plaintiff's shoes. ECF 10. Plaintiff does not, however, claim that he appealed any of the ARP denials to the Inmate Grievance Office ("IGO") or the Circuit Court. *See e.g.* ECF 10. In fact, he has not. Exhibit 4: Declaration of Robin Woolford, Deputy Director of the Inmate Grievance Office. Exhibit 5: Maryland Judiciary Case Search litigation activity.

Plaintiff makes no reference to pending matters with the IGO, and only has two matters pending in the Carroll County Circuit Court: a petition for name change, and a petition for post-conviction relief. ECF No. 1, P. 5.

Further, as of the writing of Plaintiff's Initial Complaint, he claims that he had not yet received a response to his administrative grievances related to his religious diet. ECF No. 1, P. 7. In fact, the only litigation initiated by Plaintiff since his criminal conviction was a Petition for Name Change, which was granted on December 11, 2020. Exhibit 5.

Plaintiff now brings this lawsuit pursuant to 42 U.S.C. 1983 against numerous defendants for a variety of perceived constitutional violations. Specifically, Plaintiff claims that Defendant Warden Orlando Johnson failed to provide Kosher meals in violation of his Freedom of Religion, and retaliated against Plaintiff by transferring him for complaining about this failure. ECF 10. Plaintiff further alleges that such violation and retaliation has caused Plaintiff "pain, suffering,

physical injury, mental and emotional distress." ECF No. 10, P. 19. Plaintiff provides no information in support of his claims of injury. Id.

Against Defendants Warden Orlando Johnson and Assistant Warden Briscoe, Plaintiff alleges that they "failed to provide equal protection of the Plaintiff's right to freedom of religion, was indifferent to the medical needs of the Plaintiff," and allegedly retaliated against Plaintiff for filing administrative complaints. ECF No. 10, P. 19.

Against Defendant Case Managers Harris and Hoffman, Plaintiff claims that they "failed to provide equal protection to the Plaintiff due process rights [sic] Defendant failed in [their] dut[ies] to maintain an [sic] correct updated administrative base file," and further claims that they relied upon false and/or unsubstantiated information. Plaintiff claims that this effectively deprived him of liberty interests without due process. ECF No. 10, P. 20.

Plaintiff goes on to allege that Defendant Lieutenant Whiteman "failed to provide equal protection to the Plaintiff's rights, causing pain, suffering, mental and emotional distress because he failed to correct misconduct." ECF No. 10, P. 20. Plaintiff does not, however, identify what pain, suffering, or emotional distress he suffered, nor does he identify what alleged misconduct Lt. Whiteman failed to correct. *See e.g.* ECF No. 10: Plaintiff's Amended Complaint. Plaintiff has not alleged any wrongful personal conduct by Defendant Whiteman.

Similarly, Plaintiff claims that Defendant Jeff Nines, as the Warden of North Branch Correctional Institution, is legally responsible for the operation of NBCI, and without more, claims that Defendant Nines failed to provide equal protection to Plaintiff's rights. ECF No. 10, P. 20. Again, Plaintiff has not alleged any wrongful personal conduct by Defendant Nines.

As requested relief, Plaintiff seeks "a preliminary and permanent injunction ordering defendants to provide Plaintiff with a Kosher diet," and further investigate nearly every aspect of

Plaintiff's incarceration. ECF No. 10, P. 21. Plaintiff further requests Fifty Thousand Dollars ($50,000) in compensatory damages, and One Hundred Thousand Dollars ($100,000) in punitive damages against each Defendant.

### III. **LEGAL STANDARD**

    a. Motion to Dismiss

Defendants' motion to dismiss is brought pursuant to Fed. R. Civ. P. 12(b)(6), which provides for the dismissal of a complaint, in whole or in part, if a party fails to state a claim upon which relief can be granted. A motion to dismiss under Rule 12(b)(6) "tests the sufficiency of a complaint." *Oliver v. Black Knight Asset Mgmt., LLC*, 812 F.Supp. 2d, 2, 8 (D.D.C. 2011). Fed. R. Civ. P. 8(a)(2) states generally that a pleading states a claim for relief when it contains "a short and plain statement of the claim showing that the pleader is entitled to relief."

A complaint "must give the defendants notice of the claims and the grounds upon which they rest, but specific facts are not necessary." *Atherton v. D.C. Office of Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009) (internal citations omitted). Construing this pleading standard, the Supreme Court has stated that, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations… a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). To survive a motion to dismiss pursuant to Rule 12(b)(6), an action must plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 50.

Therefore, the Court must dismiss Plaintiff's complaint if it does not "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(citation and internal quotation marks omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[W]here the well pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but has not 'show[n]' that the pleader is entitled to relief." *Iqbal* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Furthermore, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

The purpose of 12(b)(6) is to permit trial courts to terminate lawsuits "that are fatally flawed in their legal premises and destined to fail, and thus spare litigants the burden of unnecessary pre-trial and trial activity. *Advanced Cardiovascular Systems, Inc. v. Scimed Life Systems, Inc.* 988 F.2d 1157, 1160 (Fed.Cir. 1993). The Court is not required to accept as true bald assertions and legal conclusions, or it is required to draw unwarranted inferences to aid the plaintiff. *Randall v. United States*, 30 F.3d 518 (4th Cir. 1994).

      b. <u>Summary Judgment</u>

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56; *see Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986). Summary judgment is appropriate against a plaintiff who fails to make a showing sufficient to establish the existence of an element essential to his case and on which he will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The non-moving party "may not rest upon the mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Essentially, "the moving party is entitled to judgment as a matter of law because the nonmoving party has

failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex* at 323.

The Supreme Court has stated that this does not mean that any factual dispute will defeat a motion for summary judgment. "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. *Anderson* at 247 (emphasis in original). Failure to demonstrate a genuine issue for trial will result in a summary judgment. *Strag v. Rd. of Tr., Craven Comm. Coll.*, 55F.3d 943, 951 (4th Cir. 1995). The mere existence of a scintilla of evidence in support of a plaintiff's case is insufficient; there must be evidence on which a jury can reasonably find for the non-moving party. *Anderson*, 477 U.S. at 252. A fact is material for purposes of summary judgment, if when applied to the substantive law, it affects the outcome of the litigation. *Anderson*, 477 U.S. at 248. "When a motion for summary judgment is made and supported as provided in [Rule 56], an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

IV. **LEGAL ARGUMENT**

    a. Plaintiff's Amended Complaint Supersedes Previous Versions

A properly filed Amended Complaint supersedes the Original Complaint and becomes the Operative Complaint; the Original Complaint is then of "no effect." *Young v. City of Mt. Ranier,* 238 F.3d 567, 573 (4th Cir. 2001). "Thus, if an amended complaint omits claims raised in the original complaint, the plaintiff has waived those omitted claims." *Id.* In his Initial Complaint,

Plaintiff names Warden Orlando Johnson and Chaplin Tobesman as defendants. However, in the Amended Complaint, Plaintiff does not make any direct allegations against either Defendant, and does not identify them in the case caption, identification of defendants, or the ad damnum. Instead, Plaintiff names a number of additional defendants and provides the purported basis for his Amended Complaint against them.

Accordingly, because Plaintiff has failed to reference or identify Defendants Tobesman and Warden Orland Johnson in either the case caption, identification of defendants, or the ad damnum, the court may infer that Plaintiff's intent was in fact to supersede the previous filings with the most recent Amended Complaint. Accordingly, because Plaintiff has styled his most recent filing as an Amended Complaint, the allegations contained only in the initial Complaint, and Plaintiff's Supplemental Complaint are therefore omitted.

    b. <u>Plaintiff Failed to Exhaust Administrative Remedies</u>

The Prison Litigation Reform Act (PLRA) generally requires prisoners to pursue their administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process. *Chase v. Peay*, 286 F. Supp. 2d 523, 530 (D. Md. 2003) *aff'd,* 98 F. App'x 253 (4th Cir. 2004); *Gibbs v. Bureau of Prison Office*, 986 F. Supp. 941, 943-44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process); *Booth v. Churner,* 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); *Thomas v. Woolum,* 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (prisoner must follow all administrative steps to meet the

11

exhaustion requirement, but need not seek judicial review).

42 U.S.C. § 1997e(a) provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *See also Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). The Supreme Court has interpreted this provision broadly, holding that the phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532 (2002). Thus, the exhaustion requirement clearly extends to the Plaintiff's claim. Unless the Plaintiff can show that he has satisfied the administrative exhaustion requirement under the PLRA, or that the Defendant has forfeited his right to raise non-exhaustion as a defense, the complaint must be dismissed. *See Chase,* 286 F. Supp. 2d at 528.

In Maryland, there is a three-step process available to inmates through which they may seek, and subsequently exhaust, administrative remedies. First, Plaintiff must file a request for administrative remedy with the warden of the prison within 30 days from when the incident occurred, or the date the inmate first gained knowledge of the incident or injury giving rise to the complaint. If the request is denied, a prisoner has 30 calendar days to file an appeal with the Commissioner of Correction. If that appeal is denied, the prisoner then has 30 days to file a grievance with the Executive Director of the Inmate Grievance Office (IGO). *See* Md. Code Ann., Corr. Serv. §§ 10-206, 10-210; Md. Code Regs. 12.07.01.05. In order to show administrative exhaustion, Plaintiff must demonstrate that he appealed his grievance all the way to the IGO through all three steps in the administrative process. *Id.*

If an inmate is not satisfied with the action of the IGO, the Legislature has provided for

judicial review through an appeal to the Circuit Court. The Legislature by statute has made it clear that inmate complaints must be pursued before the IGO, and that any subsequent judicial involvement be limited to judicial review in an on the record appeal. *McCullough v. Wittner*, 314 Md. 602, 606 (1989).

Where an inmate files directly in the District Court, such an action is clearly not the prescribed unique avenue for such an appeal. *See* Md. Code Ann., Cts. & Jud. Proc. § 5-1003(a)(3) ("Judicial review following administrative consideration shall be the exclusive judicial remedy for any grievance or complaint within the scope of the administrative process"). Where the inmate pursues such a direct action in the District Court, in a case not falling within the exception of § 5-1003(a)(3), the District Court is without jurisdiction, and the case must be dismissed.

Plaintiff has failed to appeal his grievances regarding his failure to receive a Kosher diet, or his transfer to NBCI through all three steps in the administrative process. Because he did not pursue complaints with the IGO, or seek judicial review, Plaintiff has failed to exhaust his administrative remedies. As a result of this failure, this Court is without jurisdiction and Plaintiff's Amended Complaint must be dismissed.

   c. <u>Plaintiff's Claims are Barred by Eleventh Amendment Immunity</u>

It is well established that the Eleventh Amendment bars any suit in federal court, absent consent, against a state by its own citizens. *See Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356 (2001) (observing that "[t]he ultimate guarantee of the Eleventh Amendment is that non-consenting States may not be sued by private individuals in federal court.") It is likewise well-established that the Eleventh Amendment bars federal court actions against the agencies and departments of the state, as well as the state itself. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100-01 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (per curiam).

Similarly, claims brought against state employees in their official capacity are barred by the Eleventh Amendment because a suit against a state officer in his official capacity is tantamount to a suit against the state itself. *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985). And, as when the State itself is named as the defendant, a suit against state officials that is in fact a suit against a State is barred regardless of whether it seeks damages or injunctive relief. *Pennhurst,* 465 U.S. 101-02 (citations omitted). Defendants are therefore immune from suit in federal court in their official capacity and the claims against them must be dismissed.

> d.   Plaintiff's First Amendment Rights Were Not Violated

This Court has held that a prisoner has a First Amendment right to be free from retaliation for filing a grievance under an existing prison grievance procedure. *Booker v. South Carolina Dep't of Corr.*, __ F.3d __, No. 15-7679, 2017 WL 15315756, at *7-8 (4th Cir. Apr. 28, 2017). But this Court has explained that, in the prison context, it "treat[s] [claims of retaliation] with skepticism because 'every act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct.'" *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (citing *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994)).  Thus, an inmate cannot just assert a generalized retaliatory animus but must allege facts that support a claim of retaliation. *White v. White*, 886 F.2d 721, 724 (4th Cir. 1989).

The prisoner must also allege and prove some adverse impact from the alleged retaliation to his ability to exercise his protected right. *American Civil Liberties Union of Md., Inc. v. Wicomico County*, *Md.*, 999 F.2d 780, 785 (4th Cir. 1993).  A retaliation claim fails if there is another legitimate reason for the alleged retaliatory action. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977).

The Supreme Court has found that a particular housing assignment "is too ephemeral and insubstantial to trigger procedural due process protections as long as prison officials have discretion to transfer him for whatever reason or for no reason at all." *Meachum v. Fano*, 427 U.S. 215, 228 (1976); *see Prieto v. Clarke*, 780 F.3d 245, 254 (4th Cir. 2015) (explaining that a prisoner has no liberty interest in avoiding conditions of confinement that do not "present a dramatic departure from the basic conditions" of the prisoner's sentence) (quoting *Sandin v. Connor*, 515 U.S. 472, 485 (1995)). Similarly, Plaintiff's work assignments and classifications also receive no constitutional protection or due process. *See Altizer v. Paderick*, 569 F.2d 812, 813 (4th Cir. 1978) (stating that work assignments are "within the discretion of the prison administrators").

Here, Plaintiff claims, generally, that he has been subject to retaliation following the submission of his ARPs, and that his assignment to NBCI is itself retaliation for filing these complaints. Plaintiff's transfer was an ordinary incident of prison life, and he has stated no facts showing that the move was motivated by retaliation for his filing complaints.

In fact, Plaintiff was at MRDCC only for intake and classification. As is usual, and referenced above, a case manager performed the initial security classification, and Plaintiff was classified as a maximum security inmate. Exhibit 1. As a result, Plaintiff was transferred to NBCI – a maximum security facility. Exhibit 1. This transfer was a matter of course, and the security classification was recommended by the case manager. Exhibit 1. It is therefore clear that Plaintiff's security classification and transfer from MRDCC to NBCI was not in retaliation for filing Requests for Administrative Remedy.

It is similarly clear that Plaintiff was not denied shoes as retaliation for filing Requests for Administrative remedy – instead, in response to his correspondence to Defendant Briscoe, Plaintiff was advised that he could order shoes when he arrived at NBCI. ECF 10-2. Further, according to

15

Plaintiff's own complaint, the shoes were refused by the security chief, who is not a defendant in the instant matter. Plaintiff alleges no other facts that show any adverse impact on his ability to exercise his First Amendment rights. Accordingly, his claims must be dismissed.

### e. Plaintiff's Transfer Did Not Implicate a Liberty Interest

A classification decision or a transfer from one prison facility to another does not ordinarily implicate a protected liberty interest or state a claim under § 1983. *Meachum v. Fano*, 427 U.S. 215 (1976); *Paoli v. Lally*, 812 F.2d 1489, 1492-93 (4th Cir. 1987). A prisoner has no liberty interest in being housed in any particular facility or on a particular status. *See Olim v. Wakinekona*, 461 U.S. 238, 244-45 (1983). *Wetzel v. Edwards,* 635 F.2d 283 (4th Cir. 1980), is illustrative of the federal court's view of prison management, especially regarding the security classification of prisoners. In *Wetzel*, the Fourth Circuit reversed the district court's grant of a preliminary injunction ordering the transfer of an inmate to a medium security prison against the State's decision that the inmate warranted housing in a maximum security facility. The Fourth Circuit stated:

> Thus, the prison administrators denied Wetzel's transfer based on their informed discretion as penal administrators. The realities of running a penal institution are complex and unique to the prison environment. Federal courts have traditionally been reluctant to interfere in the problems of prison administration. Indeed, the decisions made by prison administrators in their informed discretion have been accorded "wide-ranging deference" by the federal courts. *Jones v. N. Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 126, 97 (1977). Moreover, as long as prison authorities are rationally pursuing a legitimate penological objective, the administrator has the "last word." *Pittman v. Hutto*, 594 F.2d 407, 412 (4th Cir. 1979). Judicial recognition that courts are ill-equipped to deal with problems of prison administrators ". . . reflects no more than a healthy sense of realism." *Procunier v. Martinez*, 416 U.S. 396, 405 (1974).

*Wetzel*, 635 F.2d at 288. Moreover, it is beyond cavil that inmates are not entitled as a matter of constitutional law to be housed at any particular security classification or prison. *Slezak v. Evatt*, 21 F.3d 590 (4th Cir. 1994).

16

In the instant matter, Plaintiff complains that he was transferred to NBCI, and argues that he was denied due process prior to his transfer, and that his base file was not appropriately maintained. However, as referenced above, inmates are not entitled to be housed at any particular security classification or prison. Further, Plaintiff's base file was appropriately created upon intake at MRDCC, and traveled with him to NBCI. Exhibit 1.

Defendants appropriately utilized a number of criteria in classifying Plaintiff as a maximum security inmate, and then identified that NBCI – a maximum security facility, was the appropriate to house him. Accordingly, Plaintiff's transfer to NBCI is not arbitrary or capricious, and does not implicate a protected liberty interest. Accordingly, Plaintiff's Amended Complaint must be dismissed.

    f.   Plaintiff Has Failed to State a Claim Upon Which Relief Can Be Granted

This Court should dismiss Plaintiff's Complaint because it fails to satisfy the minimum requirements for a claim as set forth by the Supreme Court. Specifically, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), reiterate threshold requirements concerning the sufficiency of pleadings. As *Twombly* expounded, and *Iqbal* confirmed, the standard of sufficiency for federal pleadings "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 555).

A complaint must pass a plausibility test that "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S.Ct. at 1949. Though Federal Rule of Civil Procedure 8 imposes no "hyper-technical" pleading requirements, it also "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 1950. Instead, Rule 8 "contemplate[s] the statement of *circumstances, occurrences, and events* in support of the claim

17

presented" and does not authorize a pleader's "bare averment that he wants relief and is entitled to it." *Twombly*, 550 U.S. at 555 n.3 (emphasis added) (quoting 5 Wright & Miller, *Federal Practice and Procedure* § 1202 at 94-95 (3d ed. 2004)).

"[W]here the complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted." *Dove v. Fordham Univ.*, 56 F. Supp.2d 330, 335 (S.D.N.Y.1999), *quoting Morabito v. Blum,* 528 F.Supp. 252, 262 (S.D.N.Y.1981). This is exactly the scenario the Court faces here. Defendants Johnson, Nines, and Whiteman are identified as defendants in the case caption and against in the ad damnum, but Plaintiff fails to allege any personal wrongdoing.

Further, Plaintiff alleges that Defendants Harris and Hoffman are "responsible for administrative case management for DERRICK L CARROLL," but provides no further support for any claim against them. Plaintiff complains that he wrote to his case manager at NBCI, Defendant Hoffman, stating that he was unhappy with his housing assignment and arguing that there were many gang members in his housing unit, but Plaintiff failed to allege that he was in any particular danger, or that he had been harmed as a result. ECF 10, P.14.

Similarly, his only claim against Defendant Harris is that she "failed in her duties to maintain an [sic] correct updated administrative base file on the Plaintiff and relied on false and unsubstantiated presumptions" that resulted in Plaintiff's transfer to NBCI. ECF 10, P. 19. However, as referenced above, a new base file is created when an inmate begins a sentence in the State of Maryland. Exhibit 1. Further, Case Managers consider a number of factors in determining an inmate's security classification, and Defendant has no liberty interest in his security classification. Accordingly, Plaintiff has failed to state a claim upon which relief can be granted.

      g. <u>No Liability Unless Personal Participation</u>

In order for liability to exist under § 1983, there must be personal involvement by the defendant in the alleged violation. *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977); *Shaw v. Stroud,* 13 F.3d 791, 799 (4th Cir. 1994); *see also Rizzo v. Goode*, 423 U.S. 362, 370-71 (1976).

There is no respondeat superior liability under §1983. *Monell v. New York Dep't of Soc. Serv.,* 436 U.S. 658, 691 (1978). Therefore, supervisory correctional officials can be held liable only for their own personal wrongdoing or for supervisory actions that themselves violate constitutional norms.  To establish supervisory liability in a §1983 action in general, the Fourth Circuit has held that it must be shown:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir.), cert. denied, 513 U.S. 813 (1994)(citations omitted). Claims against Defendants must be dismissed where, as here, there is no personal involvement in the incidents alleged.

Further, there is no personal involvement when an inmate sends complaints and the supervisor forwards them to the appropriate staff member. *See, Sealy v. Gardner*, 116 F.3d 47, 51 (2d Cir. 1997).  This is precisely the allegation against Defendant Johnson. In *Sealy*, the Second Circuit held that there was no adequate personal involvement in depriving the plaintiff of a constitutional right when the defendant delegated review of plaintiff's letter to his subordinate. *Id.*; *See, e.g., Webster v. Fletcher*, 694 F.Supp.2d 163, 180 (N.D.N.Y. 2010) (commissioner forwarding letters to staff not enough to create personal involvement); *Liner v. Goord,* 310 F.Supp.2d 550,

19

555 (W.D.N.Y. 2004) (no evidence of personal involvement when letters forward to appropriate staff for investigation); *Faird v. Goord,* 200 F.Supp.2d 220, 235 (W.D.N.Y. 2002) (superintendent sending inmate letter down chain of command for investigation not enough personal involvement for § 1983); *Gavin v. Goord,* 212 F.Supp.2d 123, 126 (W.D.N.Y. 2002) (commissioner forwarding correspondence to staff is insufficient involvement under § 1983). In the instant matter, Plaintiff has not, and cannot, allege any facts sufficient to establish that Defendants were in any way personally involved in Plaintiff's alleged grievance identified in the Amended Complaint.

Similarly, a Warden's mere review of administrative remedy procedure forms, without more, is insufficient to impose liability. *See Gallagher v. Shelton,* 587 F.3d 1063, 1069 (10th Cir. 2009)(finding that allegation that warden "rubber-stamped" grievances was not enough to establish personal participation. Absent actual personal participation in the alleged violation, the claim fails to allege a basis for the Defendant's liability. *See Trulock v. Freeh,* 275 F. 3d 391, 402 (4th Cir. 2001).

In the instant matter, Plaintiff has failed to allege any facts that would allow a fact finder to determine that Defendant Johnson, Defendant Nines, or Defendant Whiteman had the requisite knowledge of or involvement in the complained-of conditions. In fact, Plaintiff fails to even allege personal wrongdoing or involvement by any of them. *See e.g.* ECF 10. Plaintiff has similarly failed to allege that any of the perceived allegations were causally related to the harm claimed. Plaintiff impermissibly relies only on a theory of vicarious liability for his claims against these Defendants. Accordingly, they are each entitled to dismissal.

V. <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff's Amended Complaint must be dismissed. In the alternative, Defendants are entitled to judgment as a matter of law.