IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DERRICK L. CARROLL | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. PX 20-2110 |
| WARDEN FRIDAY, *et. al* | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

### DECLARATION

I, Bettie Harris, am over the age of 18, and competent to make the following Declaration based on my personal knowledge. I hereby affirm under the penalties of perjury as follows:

1. I am the Correctional Case Management Manager at the Maryland Reception, Diagnostics and Classification Center ("MRDCC"), and have held this position since 2017.

2. I am familiar with Plaintiff's allegations contained in the Amended Complaint, specifically his claims that he was denied due process because he did not attend a security classification meeting, that his transfer to North Branch Correctional Institution ("NBCI") implicated a liberty interest, and that I failed to properly maintain his inmate base file.

3. Plaintiff was transferred to MRDCC from a Delaware facility on May 26, 2020 to serve a consecutive sentence. When inmates are transferred to a Maryland facility following the completion of a sentence out of state, a new base file is created for the inmate upon arrival. The out-of-state base file is not sent with the inmate. The base file then travels with Plaintiff to the receiving facility upon his transfer within the State of Maryland.

4. When developing an inmate's initial security classification, the assigned Case Manager considers many different factors. Some of those factors include previous violent crimes,

Exhibit 1

the length of the inmate's sentence, and incarceration history. In addition, an Initial Security Classification Instrument is completed. The Case Manager then takes all of these factors together to determine the inmate's initial security classification.

5. On June 5, 2020 a Case Manager at MRDCC completed the initial security classification review, which was then approved on June 12, 2020. After the initial security classification review was completed, the Case Manager forwarded the classification to a supervisor for review. Once the supervisor approved the classification, I reviewed and finalized it.

6. MRDCC is a diagnostic and classification center. Inmates come to this facility for intake, security classification, and transfer to an appropriate facility. In this case, based upon his initial classification as a maximum security inmate, Plaintiff was transferred to North Branch Correctional Institution.

7. Before the COVID-19 pandemic, inmates were permitted to attend the initial security classification meeting. However, due to the pandemic and accompanying protocols, these meetings are now held in absentia. This is why Plaintiff was not permitted to attend that meeting.

8. In addition to holding initial security classification meetings in absentia, inmates are also tested for COVID-19 during intake, and quarantined for fourteen (14) days before transfer to the receiving facility.

9. I did not personally meet with Plaintiff, and my involvement with his case was limited to a review of the initial security classification.

I have read the above statements and based upon personal knowledge, hereby declare under the penalty of perjury that they are true and correct.

03.18.2021
Date

_Bettie Harris_
Bettie Harris, Correctional Case Management Manager

Exhibit 1