IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DERRICK L. CARROLL | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. PX 20-2110 |
| WARDEN FRIDAY, *et. al* | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

### DECLARATION

I, Bryan Hoffman, am over the age of 18, and competent to make the following Declaration based on my personal knowledge. I hereby affirm under the penalties of perjury as follows:

1. I am a Case Management Specialist II at the North Branch Correctional Institution ("NBCI"). I became a Case Management Specialist Trainee in January 2005, and have been a Case Management Specialist II since January 19, 2007. I have worked at NBCI since 2007.

2. I am familiar with Plaintiff's allegations contained in the Amended Complaint, specifically his claims that I failed to properly maintain his inmate base file, and that he was subsequently denied liberty interests without due process of law.

3. Plaintiff was transferred to NBCI from MRDCC on July 30, 2020. Prior to serving his Maryland sentence, Plaintiff was transferred from a Delaware facility to MRDCC on May 26, 2020 where he completed a previous sentence. When inmates are transferred to a Maryland facility following the completion of a sentence out of state, a new base file is created for the inmate upon arrival. The out-of-state base file is not sent with the inmate. When the new base file is created for the Maryland sentence, it travels with Plaintiff to the receiving facility

Exhibit 2

upon his transfer within throughout his incarceration in the State of Maryland.

4. The Case Management department in the institution where he is housed maintains the base file. Inmate base files at NBCI are maintained in a file room. Plaintiff is currently housed in Housing Unit 2. In addition, he has been in two (2) other housing units since his transfer to NBCI, and he had a different case manager(s) when in those housing units. From 8/26/20 to 8/28/20 he was moved to NBCI HU1 pending an adjustment. He returned to HU2 on 8/28/20 when the adjustment was dismissed. Then from 12/15/20 to 3/10/21 he was housed in NBCI HU3. He received an adjustment (rule violation) for fighting while in HU3 and was returned to HU2 on 3/10/21 upon completion of his Disciplinary Segregation.

5. When developing an inmate's initial security classification, the assigned Case Manager considers many different factors. Some of those factors include previous violent crimes, the length of the inmate's sentence, and incarceration history. In addition, an Initial Security Classification Instrument is completed. The Case Manager then takes all of these factors together to determine the inmate's initial security classification. Plaintiff has approximately 200 years remaining in his sentence, and has a history of violent offenses. Accordingly, Plaintiff was classified as a maximum security inmate during his initial security classification, and he was transferred to NBCI because he was a maximum security inmate.

6. Before the COVID-19 pandemic, inmates were permitted to attend security classification meetings. However, due to the pandemic and accompanying protocols, these meetings are now held in absentia. Inmates receive a security classification review once per year – because Plaintiff's most recent security review was in June 2020, he has not had another annual review since his arrival at NBCI.

7. Per departmental policy, upon arrival at the institution Plaintiff was placed in

Exhibit 2

Housing Unit 2. This is typical of all inmates who have been transferred from another institution. Inmates must then work their way down to Housing Unit 3, but in order to do so they must have been at the facility for a minimum of one year, and have remained out of disciplinary segregation for six months following the first year of their incarceration. This standard has been relaxed recently due to limitations on bed space caused by maintenance to Housing Unit 1. Accordingly, Plaintiff was moved to Housing Unit 3, but then moved back to Housing Unit 2 following a rule infraction.

8. Plaintiff complained to me that there were a number of Blood gang members on his tier. However, I advised Plaintiff that there were also inmates on his tier who were not gang members. I confirmed that Plaintiff has no known enemies in his housing unit. Plaintiff has not made me aware of any direct or specific threats to his safety. I also explained the facility directive for housing at NBCI.

I have read the above statements and based upon personal knowledge, hereby declare under the penalty of perjury that they are true and correct.

3-22-2021
Date

Bryan Hoffman, CCMS II
Bryan Hoffman, Case Management Specialist, II

Exhibit 2