## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

DERRICK L. CARROLL,           \*

Plaintiff,                \*

v.                      \*         Civil Action No. PX-20-2110

WARDEN FRIDAY,        \*
CHAPLAIN RABBI RACHMIEL
  TOBESMAN,           \*
ACTING WARDEN ORLANDO JOHNSON,
ASSISTANT WARDEN BRISCOE,  \*
ACTING WARDEN JEFF NINES,
LT. WHITEMAN,          \*
CASE MANAGER MRS. HARRIS, and
CASE MANAGER B. HOFFMAN,  \*

Defendants.           \*
                      ***

## <u>MEMORANDUM OPINION</u>

Derrick L. Carroll brings this action against Orlando Johnson, Acting Warden of Maryland Reception, Diagnostic and Classification Center ("MRDCC");[1] MRDCC Assistant Warden Briscoe; MRDCC Case Manager Bettie Harris; Jeffrey Nines, Acting Warden of North Branch Correctional Institution ("NBCI"); NBCI Lt. Vaughn Whiteman; NBCI Case Manager Bryan Hoffman; and Rabbi Rachmiel Tobesman.  ECF Nos. 1, 10.  Carroll asserts that Defendants have denied him kosher meals, in violation of the First Amendment, the Religious Freedom Restoration Act of 1993 ("RFRA"), and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"); that Assistant Warden Briscoe was deliberately indifferent to his medical needs; that MRDCC staff violated his due process rights under the Fifth and Fourteenth Amendments by failing to provide him access to legal materials; and lastly, that Defendants have retaliated against

---

[1] Carroll originally named "Warden Friday" as the Warden at MRDCC, but later clarified that defendant Johnson, as Acting Warden during the events described in the Complaint, is the proper party to sue.  Warden Friday shall thus be dismissed from this suit.

him for filing this suit by increasing his security classification and transferring him to NBCI, where he has been denied equal protection of the law. ECF No. 1; ECF No. 10 at 18-21. Carroll seeks declaratory and injunctive relief as well as compensatory and punitive damages. *Id.* at 21.

Defendants filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. ECF No. 22. Carroll opposed Defendants' motion (ECF No. 26), and he later filed a Motion for Temporary Restraining Order (ECF No. 27) as well as a Motion for Partial Summary Judgment (ECF No. 32). The motions are now ripe for review, with no need for a hearing. *See* Loc. R. 105.6. For the reasons that follow, Defendants' motion shall be granted in part and denied in part. Defendants shall be directed to respond to the merits of Carroll's religious diet claim, raised as violations of RLUIPA and the Free Exercise and Establishment clauses of the First Amendment. Carroll's Motion for Temporary Restraining Order shall be denied, and his Motion for Partial Summary Judgment shall be denied without prejudice

I. **Background**

The parties have submitted evidence beyond the four corners of the Complaint, and the Court construes those facts most favorably to Carroll. On May 26, 2020, Carroll was transported to MRDCC for intake, security classification, and assignment to an appropriate Maryland correctional facility. ECF No. 22-2 at ¶¶ 3, 6. Carroll had just completed a custodial sentence in Delaware, and his prison file, known as a "base file," did not carry over to Maryland. *Id.* at ¶ 3. On June 5, 2020, a Case Management Specialist performed Carroll's initial security classification review, taking into consideration Carroll's previous violent crimes, his incarceration history, and that he had 200 years remaining on his prison term. *Id.* at ¶¶ 4, 5; ECF No. 22-3 at ¶ 5. Following supervisory review and approval of the specialist's recommendation, MRDCC Case Management classified Carroll as a maximum-security inmate. ECF No. 22-2 at ¶¶ 5, 6. COVID-19 delayed

his final designation until July 30, 2020, when he was transferred to NBCI.  *Id.* at ¶ 7; ECF No. 22-3 at ¶ 3.

### A.  Denial of Kosher Diet

While he was in custody at MRDCC, Carroll avers that he had been denied kosher meals even though he expressly told staff he is "a Bennami Jew/Black Hebrew Israelite" who had received kosher meals while incarcerated in Delaware.  ECF No. 1 at 3.  The day after Carroll arrived at MRDCC, Carroll immediately requested a kosher diet, and when it was denied, he filed a Request for Administrative Remedy ("ARP") regarding this denial.  ECF No. 1-2.  He also completed a religious diet form and sent two complaints to the chaplain.  ECF No. 1 at 3-4.  Carroll received no response, and so he filed a second ARP on June 10, 2020.  *Id.*

On June 12, 2020, Rabbi Rachmiel Tobesman, the Administrative Chaplain at Central Maryland Correctional Facility and the Rabbinic Advisor to the Department of Public Safety and Correctional Services, issued Carroll a written denial of his request for a kosher diet.  *See id.* at 4; ECF No. 1-4; *see also* ECF No. 22-4 at ¶ 1.  Rabbi Tobesman concluded that Carroll "did not express sufficient understanding of [keeping] kosher" in his application, and that "much of the information cited is confusing, unverifiable and not within the beliefs of the faith groups . . . that are eligible to receive a kosher diet."  ECF No. 1-4 at 3.  Rabbi Tobesman also questioned the legitimacy of Carroll's professed status as "Bennami Jew from the lost tribe of Judah."  ECF No. 22-4 at ¶ 5. Rabbi Tobesman attested to having contacted the Urantia Foundation that Carroll had included in his application.  The foundation confirmed that the referenced group had been Christian-based in faith whose teachings had not been rooted in Judaism.  *Id.* at ¶ 7.  Thus, Rabbi Tobesman denied Carroll's application.  *See id.* at ¶ 9 (citing COMAR 12.03.02.04C(4), (6) & (7)).  Carroll challenged the denial in a third ARP filed on June 26, 2020.  ECF No. 1-5.  Once

again, Carroll was denied his request.  ECF No. 10-2 at 1.

Evidently, Carroll has not yet received a kosher diet.  ECF No. 10 at 14. While this suit was pending, Carroll submitted another Religious Diet Application, which was again rejected because he failed to "demonstrate a sufficient understanding of kosher."  ECF No. 22-4 at ¶ 10. According to Defendants, Carroll never pursued the grievance process on these claims to the Inmate Grievance Office ("IGO").  ECF No. 22-5.  Carroll offers a contrary view, stating that he did pursue his remedies with the IGO, but received no response.  ECF No. 26 at 7.

### B.  Insufficient Access to Legal Materials

Carroll avers that while at MRDCC, he was unable to defend his pending legal cases in state court because MRDCC "does not have law books, a law library or legal aid."  ECF No. 1 at 6.  He claims that, as a result, he was denied access to courts.  *Id.* at 9.  Carroll did not file an ARP on this issue.  *See* ECF Nos. 1-2, 1-3, 1-5, 1-6; *see also* ECF No. 10-2.

### C.  Medical Care

While at MRDCC, Carroll had foot pain arising from ill-fitting state issued shoes.  ECF No. 10 at 8-9.  Following a sick call on June 17, 2020, a medical provider requested to the Chief of Security that Carroll be allowed to have his family send in standard walking shoes.  *Id.* at 9; ECF No. 10-2 at 15.  Carroll's mother sent new shoes on July 5, 2020, but they had not yet been approved by the Chief of Security.  ECF No. 10 at 10; ECF No. 10-2 at 16.  When Carroll did not receive the shoes, he complained to the Assistant Warden who informed Carroll that he could order the requested shoes once he is transferred to NBCI.  ECF No. 10 at 11; ECF No. 10-2 at 5.  Carroll did not file an ARP as to this claim.  *See* ECF No. 1-2, 1-3, 1-5, 1-6; ECF No. 10-2.

### D.  Alleged Retaliation

In late July 2020, a lieutenant at MRDCC told him that if he kept filing complaints and

ARPs, he would be "'shipped out' to a worst place [sic]."  ECF No. 10 at 13.  On July 30, 2020, Carroll was transferred to NBCI, and according to Carroll, he was placed on a tier with several "gang members."  *Id.*; ECF No. 22-3 at ¶ 3.  On September 6, 2020, he filed an ARP seeking transfer to a lower security housing unit.  ECF No. 10 at 15; ECF No. 10-2 at 23.  That request was denied.  *Id.*

Carroll maintains that he is in "fear for his life and further retaliation" at NCBI.  ECF No. 10 at 14.  He asks this Court to order immediately his transfer to another prison, noting that his fears are compounded because his criminal trial was "racially charged," he is Black, and every correctional officer at NBCI is White.  ECF No. 27.  Carroll also has moved for partial summary judgment and injunctive relief, requesting that the Court direct Defendants to provide him daily kosher meals.  ECF No. 32.  The Court first discusses the claims that must be dismissed without prejudice on exhaustion grounds and next the merits of the remaining claims.

## II.    Standards of Review

When reviewing a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court accepts the well-pleaded allegations as true and most favorable to the plaintiff. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "However, conclusory statements or a 'formulaic recitation of the elements of a cause of action will not [suffice].'"  *EEOC v. Performance Food Grp., Inc.*, 16 F. Supp. 3d 584, 588 (D. Md. 2014) (quoting *Twombly*, 550 U.S. at 555).  "Factual allegations must be enough to raise a right to relief above a speculative level." *Twombly*, 550 U.S. at 555.  "'[N]aked assertions' of wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief.'"  *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 557).  Although pro se pleadings are construed generously to allow for the

development of a potentially meritorious case, *Hughes v. Rowe*, 449 U.S. 5, 9 (1980), courts cannot ignore a clear failure to allege facts setting forth a cognizable claim. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990). "A court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are not more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 665 (2009).

A motion for summary judgment brought pursuant to Rule 56 shall be granted if the movant demonstrates that no genuine issue of disputed material fact exists, rendering the movant entitled to judgment as a matter of law. *See In re Family Dollar FLSA Litig.*, 637 F.3d 508, 512 (4th Cir. 2011). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "The party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of [his] pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)).

Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court must view the evidence in the light most favorable to the non-movant without weighing the evidence or assessing witness credibility. *See Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-44 (4th Cir. 2002). Factually unsupported claims and defenses may not proceed to trial. *Bouchat*, 346 F.3d at 526.

### III.     Analysis

### A.  Dismissal for Failure to Exhaust Administrative Remedies

Several of Carroll's claims must be dismissed without prejudice because Carroll has failed to exhaust administrative remedies.  The Prisoner Litigation Reform Act provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Although exhaustion under § 1997e(a) is not a jurisdictional prerequisite, plaintiffs must nonetheless exhaust before this Court will hear the claim.  *See Jones v. Bock*, 549 U.S. 199, 215-16 (2007); *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.2d 674, 682 (4th Cir. 2005).

The exhaustion requirement "allow[s] a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record."  *Bock*, 549 U.S. at 219.  The purpose of exhaustion is to encourage pursuit of administrative grievances through final denial of the claims, appealing through all available stages in the administrative process.  *Chase v. Peay*, 286 F. Supp. 2d 523, 530 (D. Md. 2003).  Because the Court may not consider an unexhausted claim, *see Bock*, 549 U.S. at 220, in this very real sense, exhaustion prior to federal suit is mandatory.  *Ross v. Blake*, 578 U.S. 632, 639 (2016).  Therefore, a court ordinarily may not excuse a failure to exhaust.  *Ross*, 578 U.S. at 639 (citing *Miller v. French*, 530 U.S. 327, 337 (2000) (explaining "[t]he mandatory 'shall'. . . normally creates an obligation impervious to judicial discretion")).

Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines."  *Woodford v. Ngo*, 548 U.S. 81, 88, 93

(2006).  Importantly, however, the Court must ensure that "any defects in exhaustion were not procured from the action or inaction of prison officials."  *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).  Moreover, an inmate need only exhaust "available" remedies.  42 U.S.C. § 1997e(a); *see Ross*, 136 S.Ct. at 1855. An administrative remedy is not "available" where the prisoner, "through no fault of his own, was prevented from availing himself of it."  *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) (citing *Aquilar-Avellaveda*, 478 F. 3d at 1225); *Kaba*, 458 F.3d at 684.

The Maryland state administrative grievance process provides for "inmate complaint resolution."  *See generally* Md. Code (2008 Repl. Vol.), Correctional Services Article ("C.S."), §§ 10-201 *et seq.*; Code of Maryland Regulations ("COMAR") 12.07.01.01B(1) (defining ARP).  If an ARP is filed and denied, the prisoner may appeal the denial within 30 days to the Commissioner of Correction.  If the Commissioner of Correction denies the appeal, the prisoner may file a grievance with the IGO, also within 30 days.  OPS.185.0002.05D; C.S. § 10-206(a); C.S. § 10-210; COMAR 12.07.01.05B.  If the grievance is determined to be "wholly lacking in merit on its face," the IGO may dismiss it without a hearing.  C.S. § 10-207(b)(1); *see* COMAR 12.07.01.07B. An order of dismissal constitutes the final decision of the Secretary of DPSCS for purposes of judicial review.  C.S. § 10-207(b)(2)(ii).

Viewing the Complaint facts as true, the Court sees no basis to conclude that Carroll exhausted administrative remedies as to his denial of access to courts claim based on the lack of a law library and legal materials at MRDCC, or for his medical claims arising from the denial of walking shoes.  ECF No. 22-1 at 11-13.  To be sure, Carroll filed several ARPs while at MRDCC, but none were related to these claims.  *See* ECF Nos. 1-2, 1-3, 1-5, 1-6 (addressing only religious diet claim).  Because Carroll has not sufficiently exhausted administrative remedies under the

PLRA, the Court must dismiss these claims without prejudice.

As to Carroll's claims for denial of kosher meals, the Court will not dismiss on exhaustion grounds. The record supports that Carroll had filed several ARPs regarding this claim, including to the IGO, and that he never received a response. At this stage, the Court will not penalize Carroll for defects in the exhaustion process. The Court next addresses this substance of the claims.

## B. Religious Diet Claims

"The Establishment Clause prohibits state action with a sectarian legislative purpose or with the primary effect of advancing religion, including fostering an 'excessive government entanglement' with religion." *Glassman v. Arlington Cty.*, 628 F.3d 140, 146 (4th Cir. 2010) (quoting *Lemon v. Kurtzman*, 403 U.S. 602, 613 (1971)). "[A]t a minimum, the Constitution guarantees that government may not coerce anyone to support or participate in religion or its exercise, or otherwise act in a way which 'establishes a [state] religion or religious faith, or tends to do so.'" *Lee*, 505 U.S. at 587 (quoting *Lynch v. Donnelly*, 465 U.S. 668, 678 (1984)).

Under the Free Exercise Clause of the Constitution, inmates retain a right to reasonable opportunities for free exercise of religious beliefs without concern for the possibility of punishment. *See Cruz v. Beto*, 405 U.S. 319, 322 (1972) (per curiam). Prison restrictions that affect the free exercise of religion but are related to legitimate penological objectives, however, do not run afoul of the constitution. *See Turner v. Safely*, 482 U.S. 78, 89–91 (1987). To determine if the restrictions on religious exercise are related to legitimate penological objectives, courts consider:

> (1) whether there is a "valid, rational connection" between the prison regulation or action and the interest asserted by the government, or whether this interest is "so remote as to render the policy arbitrary or irrational"; (2) whether "alternative means of exercising the right . . . remain open to prison inmates"; (3) what impact the desired accommodation would have on security staff,

> inmates, and the allocation of prison resources; and (4) whether there exist any "obvious, easy alternatives" to the challenged regulation or action.

*Wall v. Wade*, 741 F.3d 492, 499 (4th Cir. 2014) (quoting *Lovelace v. Lee*, 472 F.3d 174, 200 (4th Cir. 2006)).   Relevant to this claim, a prisoner maintains a clearly established right to a diet consistent with his religious principles.  *Wall*, 741 F.3d at 498–500.

Carroll also alleges violations of RLUIPA, which provides, in part:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person--(1) is in furtherance of a compelling government interest; and (2) is the least restrictive means of furthering that compelling government interest.

42 U.S.C. § 2000cc-1(a).  RLUIPA "protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion."  *Cutter v. Wilkinson*, 544 U.S. 709, 721 (2005); *see Holt v. Hobbs*, 574 U.S. 352, 357–58 (2015); *Smith v. Ozmint*, 578 F.3d 246, 250 (4th Cir. 2009); *Lovelace*, 472 F.3d at 186.  RLUIPA, thus, is aimed at ensuring that prisoners may freely exercise religious liberties on par with non-incarcerated persons when possible.  *See Cutter*, 544 U.S. at 715–17.

RLUIPA defines "religious exercise" as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief."  42 U.S.C. § 2000cc-5(7)(A); *Holt*, 574 U.S. at 358; *Smith*, 578 F.3d at 251.  Under RLUIPA, the inmate bears the burden of demonstrating that the challenged prison policy substantially burdens his exercise of his religion.  *See* 42 U.S.C. § 2000cc-2(b); *Holt*, 574 U.S. at 361. A substantial burden exists where a regulation "puts substantial pressure on [the plaintiff] to modify its behavior."   *Jesus Christ Is the Answer Ministries, Inc. v. Baltimore Cnty.*, 915 F.3d 256, 260 (4th Cir. 2019) (quoting *Bethel World*

*Outreach Ministries v. Montgomery Cnty. Council*, 706 F.3d 548, 556 (4th Cir. 2013)).  A prison regulation also imposes a substantial burden when it "forces a person to choose between following the precepts of [his] religion and forfeiting governmental benefits, on the one hand, and abandoning one of the precepts of [his] religion . . . on the other hand."  *Lovelace*, 472 F.3d at 187 (internal quotation marks and citation omitted).

Although the plaintiff does not have to show the challenged practice is "required or essential to his [or her] religion," he must at least "demonstrate that the government's denial of a particular religious . . . observance was more than an inconvenience to [his] religious practice." *Tillman v. Allen*, 187 F.Supp.3d 664, 673 (E.D.Va. 2016) (citations omitted). "Substantial burden," here is the same as in the First Amendment context.  *Lovelace*, 472 F.3d at 187.  "[C]ourts properly consider whether the inmate retains other means for engaging in the particular religious activity . . . in assessing whether a denial of the inmate's preferred method for engaging in that religious exercise imposes a substantial burden."  *Tillman*, 187 F.Supp.3d at 674 (citation omitted).

Defendants have not addressed whether Carrolls' Free Exercise Clause, Establishment Clause, or RLUIPA claims survive as a matter of law on the merits.  Further, to the extent the Defendants have provided Rabbi Tobesman's conclusion that Carroll "did not express sufficient understanding of kosher . . . to receive a kosher diet," that alone does not dispose of the claims. This is because Carroll need only establish a sincerely held belief, "whether or not compelled by, or central to, a [recognized] system."  *Holt*, 574 U.S. at 360–61.  Accordingly, Defendants' motion to dismiss or alternatively for summary judgment on these claims is denied.  The parties shall address the merits of the claims as directed in the Order accompanying this decision.[4]

---

[4] Carroll also avers that denial of his requested violates RFRA.  RFRA, to be sure, prohibits prison officials from substantially burdening the exercise of one's religion unless the burden furthers a compelling governmental interest and is the least restrictive means of furthering that interest.  42 U.S.C. § 2000bb-1.  However, the Supreme Court

### C.  Retaliation and Due Process Claims

The Court next turns to the claims concerning Carroll's transfer for NBCI.  Carroll first complaints that he was transferred without a hearing, ostensibly in violation of the federal due process rights.  But not all state-created internal prison procedures trigger due process protections.  Only those actions which implicate an inmate's protected liberty interest, such as loss of good conduct time, are actionable.  *See Ewell v. Murray*, 11 F.3d 482, 488 (4th Cir. 1993); *see also Montanye v. Haymes*, 427 U.S. 236, 242 (1976).  Similarly, prison procedures which impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," too implicate due process protections.  *Sandin v. Conner*, 515 U.S. 472, 477-78, 483-84 (1995).

By contrast, prisoners do not maintain a due process right to be housed in a particular prison, absent a showing of significant hardship.  *See Sandin* 515 U.S. at 484; *Altizer v. Paderick*, 569 F.2d 812, 813 (4th Cir. 1978) (work assignments are at prison officias' discretion).  "[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution."  *Meachum v. Fano*, 427 U.S. 215, 224 (1976).  Courts must accord great deference to decisions regarding the administration of a prison facility.  *Bell v. Wolfish,* 441 U.S. 520, 547 (1979).  As the Supreme Court has cautioned, "[t]he difficulties of operating a detention center must not be underestimated by the courts."  *Florence v. Bd. of Chosen Freeholders of Cty. of Burlington*, 566 U.S. 318, 326 (2012).

---

has held RFRA does not extend to the States.  *See City of Beorne v. Flores*, 521 U.S. 507, 516-17 (1997); *see also Holt v. Hobbs*, 135 S.Ct. 853 (2015).  Thus, Carroll's RFRA claim fails as a matter of law and must be dismissed with prejudice.

Carroll's due process liability theory concerns an alleged retaliatory motive behind his transfer to NBCI.  Accordingly, to survive challenge, Carrol must allege sufficient facts to make plausible that: 1) he had engaged in protected conduct; 2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and 3) a causal connection exists between the first two elements, or that his protected conduct motivated at least in part the adverse action.  *See Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005); *Thaddeus-X. v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).  If there is no impairment of a plaintiff's rights, however, there is no need for the protection provided by a cause of action for retaliation.  Thus, a showing of adversity is essential to any retaliation claim.  *Id.* at 599 (citing *Board of Regents v. Roth*, 408 U.S. 564, 576-78 (1972)).

The undisputed record reflects that MRDCC functions only as a temporary intake facility for newly admitted Maryland prisoners pending classification and designation to a Maryland corrections institution.  Thus, the record reflects that Carroll would be designated to another facility in any event.  Further, the record indisputably supports that Carroll was designated to NBCI based upon his history violent crimes, previous incarceration record, and lengthy prison term (200 years) left to serve.  By contrast, other than Carroll's mere averment, nothing in the record suggests that placement at NBCI was at all affected by his having filed ARPs at MRDCC.  Thus, no reasonable trier of fact could conclude that Carroll had been placed at NBCI as retaliation for his filing ARPs.

Nor can Carroll's due process claim rest on his inability to participate in his classification due to the COVID-19 pandemic.  Fundamentally, no protected liberty interest exists in being housed in a particular institution.  Thus, while it would have been preferable for prison procedures to have weathered the COVID pandemic without disruption, this particular one simply does not

13

rise to the level of a due process violation.  Defendants are entitled to summary judgment on these claims.

### D.  Equal Protection Claims

Lastly, Carroll summarily asserts that Defendants have violated his equal protection rights. *See* ECF No. 10 at 18-20.  The Equal Protection Clause generally requires the government to treat similarly situated people alike.  *Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). To pursue an equal protection claim, a plaintiff must demonstrate that he was treated differently than similarly situated inmates and the discrimination was intentional or purposeful.  "If he makes this showing, 'the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny.'" *Veney v. Wyche,* 293 F.3d 726, 730-31 (4th Cir. 2002) (citing *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001)).

When viewing the facts most favorably to Carroll, nothing demonstrates that he has been treated differently than similarly situated inmates.  Therefore, his claim necessarily fails.  *See Twombly*, 550 U.S. at 555 ("a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do") (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  Carroll's equal protection claim shall be dismissed.

### E.  Carroll's Motion for Temporary Restraining Order

Carroll has filed a Motion for Temporary Restraining Order seeking to be moved to another prison.  Preliminary injunctive relief is an extraordinary and drastic remedy.  *See Munaf v. Geren*, 553 U.S. 674, 689-90 (2008).  A party seeking such relief must demonstrate: (1) a likelihood of success on the merits; (2) a likelihood of suffering irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the party's favor; and (4) why the injunction is in the

public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *The Real Truth About Obama, Inc. v. Federal Election Comm'n*, 575 F.3d 342, 346-47 (4th Cir. 2009). As to irreparable harm, the movant must show the harm to be "neither remote nor speculative, but actual and imminent." *Direx Israel, Ltd. v. Breakthrough Med. Group*, 952 F.2d 802, 812 (4th Cir. 1991) (citation omitted). In the prison context, courts should grant preliminary injunctive relief involving the management of correctional institutions only under exceptional and compelling circumstances. *See Taylor v. Freeman*, 34 F.3d 266, 269 (4th Cir. 1994).

Carroll asserts that he fears for his life while at NBCI because his criminal trial was racially charged, he is Black, and every correctional officer at NBCI is White. However, he does not allege, nor does it appear from the record, that he has suffered any harm while housed in that facility, or that he has been threatened with harm. Again, prisoners do not have a constitutional right to have access to certain programs or housing absent a showing of significant hardship. "[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution." *Meachum,* 427 U.S. at 224. Because Carroll has failed to aver any facts that demonstrate he is likely to succeed on the merits or that he is likely to suffer irreparable harm, his Motion for Temporary Restraining Order shall be denied.

## IV.    Conclusion

Based on the foregoing, Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment is granted in part and denied in part. Carroll's access to courts and deliberate indifference claims are dismissed without prejudice for failure to exhaust administrative remedies. Claims related to his denial of a kosher diet are denied, and summary judgment is granted in favor

of Defendants on Carroll's retaliation and due process claims.  Carroll's Motion for Temporary

Restraining Order is denied, and his Motion for Partial Summary Judgment is denied without

prejudice.  Counsel for defendants shall file a responsive pleading addressing the substance of

Carroll's religious diet claim, as raised pursuant to RLUIPA and the Free Exercise and

Establishment clauses of the First Amendment, within 28 days.

A separate Order follows.


_____2/18/22_____                              _____/S/_____
Date                                             Paula Xinis
                                                 United States District Judge