IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DERRICK L. CARROLL, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. PX-20-2110 |
| CHAPLAIN RABBI RACHMIEL TOBESMAN, | * | |
| ACTING WARDEN ORLANDO JOHNSON, ASSISTANT WARDEN BRISCOE, | * | |
| ACTING WARDEN JEFF NINES, LT. WHITEMAN, | * | |
| CASE MANAGER MRS. HARRIS, and CASE MANAGER B. HOFFMAN, | * | |
| | * | |
| Defendants. | | |

***

## MEMORANDUM OPINION

Plaintiff Derrick L. Carroll (now known as King Noblemind Meek-Freeman) initiated this action on July 20, 2020, while incarcerated at the Maryland Reception, Diagnostic and Classification Center ("MRDCC"). ECF No. 1. He filed an Amended Complaint on November 20, 2020, claiming that Defendants denied him kosher meals, in violation of the First Amendment to the United States Constitution and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). ECF No. 10. Plaintiff also raised other claims that this Court adjudicated by Memorandum Opinion and Order dated February 18, 2022. ECF Nos. 37, 38. The Court also directed Defendants to file a responsive pleading addressing the substance of Plaintiff's religious diet claim. *Id.* Defendants complied by filing a Second Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. ECF No. 39. Plaintiff opposed Defendants' motion (ECF Nos. 44, 45, 46),[1] and he later filed a second Motion to Amend the Complaint to add several claims

---

[1] The Court initially granted Plaintiff until May 11, 2022, to respond to Defendants' Motion. ECF No. 42.

arising from separate incidents against new individuals (ECF No. 47).

The matter is now ripe for review, with no need for a hearing. *See* Loc. R. 105.6. For the reasons that follow, the Court will deny Defendants' motion, construed as one for summary judgment, as well as Plaintiff's Motion to Amend. The Court will also appoint pro bono counsel to represent Plaintiff.

I. **Background**

As noted in the Court's previous Memorandum Opinion, the parties have submitted evidence beyond the four corners of the Complaint, and the Court construes those facts most favorably to Plaintiff. *See* ECF No. 37 at 2. On May 26, 2020, Plaintiff was transported to MRDCC for intake, security classification, and assignment to an appropriate Maryland correctional facility. ECF No. 22-2 at ¶¶ 3, 6. Plaintiff had just completed a custodial sentence in Delaware, and his prison file, known as a "base file," did not carry over to Maryland. *Id.* at ¶ 3.

While he was in custody at MRDCC, Plaintiff stated that he was denied kosher meals, even though he expressly told staff he is "a Bennami Jew/Black Hebrew Israelite" who had received kosher meals while incarcerated in Delaware. ECF No. 1 at 3. Pursuant to the Code of Maryland Regulations ("COMAR"), Plaintiff submitted a Religious Diet Application form. ECF No. 39-2; *see also* COMAR 12.03.02.04. In his application, Plaintiff left the Religious Affiliation section blank, and when instructed to "list all of the religions you have pursued in the past 5 years," he stated, "None, following the laws of God is my religion." ECF No. 39-2. When asked to provide an "Additional Supporting Contact Information" such as a "Synagogue, Mosque, Temple, Church Affiliation," Plaintiff identified the Urantia Foundation. *Id.*

---

On April 22, 2022, Plaintiff filed a Motion for Extension of Time (ECF No. 43), which shall be granted, *nunc pro tunc*. Plaintiff filed his opposition to Defendants' Motion on May 16, 2022. ECF No. 44.

On June 12, 2020, Rabbi Rachmiel Tobesman, the Administrative Chaplain at Central Maryland Correctional Facility and the Rabbinic Advisor to the Department of Public Safety and Correctional Services, issued Plaintiff a written denial of his request for a kosher diet. *See id.* at 4; ECF No. 1-4; *see also* ECF No. 22-4 at ¶ 1. Rabbi Tobesman concluded that Plaintiff "did not express sufficient understanding of [keeping] kosher" in his application, and that "much of the information cited is confusing, unverifiable and not within the beliefs of the faith groups . . . that are eligible to receive a kosher diet." ECF No. 1-4 at 3. Rabbi Tobesman also questioned the legitimacy of Plaintiff's professed status as "Bennami Jew from the lost tribe of Judah." ECF No. 22-4 at ¶ 5. Rabbi Tobesman attested to having contacted the Urantia Foundation that Plaintiff had included in his application. The foundation confirmed that the referenced group had been Christian-based in faith whose teachings had not been rooted in Judaism. *Id.* at ¶ 7. Thus, Rabbi Tobesman denied Plaintiff's application. *See id.* at ¶ 9 (citing COMAR 12.03.02.04C(4), (6) & (7)).

On July 30, 2020, Carroll was transferred to North Branch Correctional Institution ("NBCI") in Cumberland, Maryland. ECF No. 22-3 at ¶ 3. He submitted another Religious Diet Application form, which was again rejected on December 8, 2020, after a finding that Plaintiff was unable to demonstrate a sufficient understanding of kosher and provided only "confusing and unverifiable information." ECF 22-4. In this latest round of briefing, Plaintiff insists that he is "a sincere Jewish man" who loves God and worships God in accordance with Judaism. ECF No. 44. He attaches excerpts from the "Urantia Book" to support his assertion that Defendants do not have a clear understanding of his religion. *Id.* Plaintiff also includes a copy of his Maryland Division of Correction identification card, valid from April 7, 2022, to April 7, 2025, which notes that his "Dietary Status" is "kosher." ECF No. 45. In a separate declaration, Plaintiff states that NBCI

3

has a kosher kitchen; however, as of June 30, 2022, he had not "received a kosher diet other than during Passover." ECF No. 46.

## II. Standards of Review

Defendants move to dismiss all claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure or, in the alternative, for summary judgment to be granted in their favor under Rule 56. A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). Pursuant to Rule 12(d), if "matters outside the pleadings are presented to and not excluded by the court" in connection with a Rule 12(b)(6) motion, "the motion must be treated as one for summary judgment under Rule 56," and the parties "must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

The parties have supplied evidence going beyond the four corners of the Complaint. ECF Nos. 39-2, 44-1, 44-2, 45. Plaintiff also knew that the Court intended to reach the merits of the religious diet claim after additional briefing. *See* ECF No. 37. In response, Plaintiff supplied an additional declaration and did not otherwise oppose the Court's treating the motion as one for summary judgment. ECF No. 46; *see Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998). The Court will treat the motion accordingly.

A motion for summary judgment brought pursuant to Rule 56 shall be granted if the movant demonstrates that no genuine issue of disputed material fact exists, rendering the movant entitled to judgment as a matter of law. *See In re Family Dollar FLSA Litig.*, 637 F.3d 508, 512 (4th Cir. 2011). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "The party opposing a properly supported motion for summary judgment may not rest upon the

4

mere allegations or denials of [his] pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)).

Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court must view the evidence in the light most favorable to the non-movant without weighing the evidence or assessing witness credibility. *See Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-44 (4th Cir. 2002). Factually unsupported claims and defenses may not proceed to trial. *Bouchat*, 346 F.3d at 526.

### III. Discussion

#### A. Defendants' Motion for Summary Judgment on Religious Diet Claims

Plaintiff alleges that Defendants' refusal to provide him with kosher meals violates the First Amendment's Free Exercise and Establishment Clauses, as well as Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc, *et seq*. The Court considers the claims together.

"The Establishment Clause prohibits state action with a sectarian legislative purpose or with the primary effect of advancing religion, including fostering an 'excessive government entanglement' with religion." *Glassman v. Arlington Cty.*, 628 F.3d 140, 146 (4th Cir. 2010) (quoting *Lemon v. Kurtzman*, 403 U.S. 602, 613 (1971)). "[A]t a minimum, the Constitution guarantees that government may not coerce anyone to support or participate in religion or its exercise, or otherwise act in a way which 'establishes a [state] religion or religious faith, or tends to do so.'" *Lee v. Weisman*, 505 U.S. 577, 587 (1992) (quoting *Lynch v. Donnelly*, 465 U.S. 668,

678 (1984)). Under the Free Exercise Clause of the Constitution, inmates retain the right to reasonable opportunities for free exercise of religious beliefs without concern for the possibility of punishment. *See Cruz v. Beto*, 405 U.S. 319, 322 (1972) (per curiam). Prison restrictions that affect the free exercise of religion but are related to legitimate penological objectives, however, do not run afoul of the Constitution. *See Turner v. Safely*, 482 U.S. 78, 89–91 (1987). To determine if the restrictions on religious exercise are related to legitimate penological objectives, courts consider:

> (1) whether there is a "valid, rational connection" between the prison regulation or action and the interest asserted by the government, or whether this interest is "so remote as to render the policy arbitrary or irrational"; (2) whether "alternative means of exercising the right . . . remain open to prison inmates"; (3) what impact the desired accommodation would have on security staff, inmates, and the allocation of prison resources; and (4) whether there exist any "obvious, easy alternatives" to the challenged regulation or action.

*Wall v. Wade*, 741 F.3d 492, 499 (4th Cir. 2014) (quoting *Lovelace v. Lee*, 472 F.3d 174, 200 (4th Cir. 2006)). Relevant to Plaintiff's claim, a prisoner maintains a clearly established right to be given a diet consistent with his religious principles. *Wall*, 741 F.3d at 498–500.

Plaintiff also alleges violations of RLUIPA, which provides, in part:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person--(1) is in furtherance of a compelling government interest; and (2) is the least restrictive means of furthering that compelling government interest.

42 U.S.C. § 2000cc-1(a). RLUIPA "protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." *Cutter v. Wilkinson*, 544 U.S. 709, 721 (2005); *see Holt v. Hobbs*, 574 U.S. 352, 357–58 (2015); *Smith v. Ozmint*, 578 F.3d 246, 250 (4th Cir. 2009); *Lovelace*, 472 F.3d at 186. RLUIPA, thus, is aimed at ensuring that prisoners were entitled to

6

similar religious free-exercise rights to those enjoyed by individuals who are not incarcerated. *See Cutter*, 544 U.S. at 715–17.

RLUIPA defines "religious exercise" as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A); *Holt*, 574 U.S. at 358; *Smith*, 578 F.3d at 251. Under RLUIPA, the inmate must show that the challenged policy substantially burdens his exercise of his religion. *See* 42 U.S.C. § 2000cc-2(b); *Holt*, 574 U.S. at 361. A substantial burden exists where a regulation "puts substantial pressure on [the plaintiff] to modify its behavior." *Jesus Christ Is the Answer Ministries, Inc. v. Baltimore Cnty.*, 915 F.3d 256, 260 (4th Cir. 2019) (quoting *Bethel World Outreach Ministries v. Montgomery Cnty. Council*, 706 F.3d 548, 556 (4th Cir. 2013)). A prison regulation also imposes a substantial burden when it "forces a person to choose between following the precepts of [his] religion and forfeiting governmental benefits, on the one hand, and abandoning one of the precepts of [his] religion . . . on the other hand." *Lovelace*, 472 F.3d at 187 (internal quotation marks and citation omitted).

Although the plaintiff does not have to show that the challenged practice is "required or essential to his [or her] religion," he must at least "demonstrate that the government's denial of a particular religious . . . observance was more than an inconvenience to [his] religious practice." *Tillman v. Allen*, 187 F.Supp.3d 664, 673 (E.D.Va. 2016) (citations omitted). "Substantial burden" under RLUIPA is the same as in the First Amendment context. *Lovelace*, 472 F.3d at 187. "[C]ourts properly consider whether the inmate retains other means for engaging in the particular religious activity . . . in assessing whether a denial of the inmate's preferred method for engaging in that religious exercise imposes a substantial burden." *Tillman*, 187 F.Supp.3d at 674 (citation omitted).

As to the constitutional and RLUIPA claims, Defendants argue that summary judgment is

7

warranted because no evidence demonstrates that denial of kosher meals are more than a mere inconvenience to Plaintiff's religious practice.  The Court disagrees.  When viewing the record most favorably to Plaintiff, he has adduced sufficient evidence that sincerely believes keeping kosher is essential to his religious practice.   Indeed, he has adhered to a kosher diet since 2017, which, along with "following the laws of his creator," has helped "his life . . . change[] for the better."  ECF No. 10 at 5.  And even the Department of Corrections itself currently recognizes Plaintiff's dietary status as "kosher."  ECF No. 45.  Despite this, Defendants not only denied him kosher meals, but as a result, Plaintiff was forced to adhere to a "vegetarian diet" and he "mainly ate and lived off boiled eggs that he prayed over." *Id.* at 8.  On this record, a reasonable factfinder could conclude that Defendants have substantially burdened Plaintiff's religious exercise by forcing him to choose between forfeiting prison meals and abandoning the precepts of his religion.  Thus, in light of Plaintiff's self-represented status and stated beliefs, the Court finds that he has met his burden of demonstrating that denial of kosher meals is a substantial burden to his religious practice.

Next for the RLUIPA claim, once the Plaintiff meets his prima facie burden of demonstrating that the claimed denial amounts to a substantial burden on his religion, Defendants must prove that its policy leading to the denial "furthers a compelling governmental interest by the least restrictive means." *Incumaa v. Stirling*, 791 F.3d 517, 525 (4th Cir. 2015).  Similarly, as to the First amendment free exercise claim, the burden shifts to Defendants to show that the denial was related to legitimate penological objectives.  *See Lovelace*, 472 F.3d at 200; *Wall*, 741 F.3d at 499.

Defendants have exclusively argued that the denial of kosher meals did not substantially burden Plaintiff's exercise of his religion; they did not argue or attempt to show that the denial of

Plaintiff's request furthered any penological interest at all, and certainly not a legitimate or compelling one. ECF No. 13. Given this, the Court must deny Defendants' motion for summary judgment on the religious diet claims.

### B. Plaintiff's Motion to Amend the Complaint

For the second time, Plaintiff seeks permission to amend his Complaint to add claims related to events that postdate the filing of the operative complaint. ECF No. 47. The amendments more particularly assert constitutional violations surrounding alleged misconduct of corrections officers unrelated to his religious diet claim. *Id.* Pursuant to Federal Rule 15(a), the Court shall freely allow amendment when the interests of justice require. Fed R. Civ. P. 15(a)(2). Such interests are not served here. *See Island Creek Coal Co. v. Lake Shore, Inc.*, 832 F.2d 274, 279 (4th Cir.1987) (stating that undue delay, bad faith or dilatory motive warrant denial of leave to amends). Because the amended allegations concern alleged misconduct that postdates the operative complaint and bears no relation to the central claim in this case, amendment would unduly confuse, complicate, and prolong this matter. Thus, the motion is denied. Should Plaintiff wish to pursue any of these new claims, he must file a separate action.

### IV.   Conclusion

For the foregoing reasons, the Court denies Defendants' Second Motion to Dismiss or, in the Alternative, Motion for Summary Judgment.

Additionally, because Plaintiff proceeds *in forma pauperis*, it would be difficult, if not impossible, for him to engage in discovery without the assistance of counsel. *See* ECF Nos. 2, 5. Thus, counsel shall be appointed to represent him. *See* 28 U.S.C. § 1915(e)(1) (the Court may request an attorney to represent any person proceeding in forma pauperis who is unable to afford counsel); *see also Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975) (stating that courts appoint

counsel only in exceptional circumstances).  Following appointment, counsel for Plaintiff shall promptly review the pleadings and engage in a good faith meet-and-confer regarding a mutually agreeable discovery deadline date and further scheduling of the progress of this case.  Within 21 days from appointment, the parties shall file a joint written status report setting forth proposed discovery and dispositive motions deadlines.

      A separate Order follows.


| | |
|---|---|
| 2/21/23 | /S/ |
| Date | Paula Xinis<br>United States District Judge |